UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GERALD S. BAILEY

                          Plaintiff,            **REPORT**
                                                **and**
        v.                                      **RECOMMENDATION**

JO ANNE BARNHART                                **05-CV-841A(F)**
                          Defendant.
_____

APPEARANCES:            GERALD S. BAILEY, *Pro Se*
                        174 Wakefield Avenue Upper
                        Buffalo, NY 14214

                        KATHLEEN M. MEHLTRETTER
                        Acting United States Attorney
                        KEVIN D. ROBINSON
                        Assistant United States Attorney, of Counsel
                        Federal Centre
                        138 Delaware Avenue
                        Buffalo, NY 14202


## JURISDICTION

    This case was referred to the undersigned by Honorable Richard J. Arcara on

June 20, 2007 for a Report and Recommendation on dispositive motions. The matter is

presently before the court on Defendant's motion for judgment on the pleadings (Doc.

No. 9) filed September 6, 2007 ("Defendant's motion").


## BACKGROUND

    Plaintiff, Gerald S. Bailey, seeks review of the Commissioner of Social Security's

("the Commissioner") decision denying him Supplemental Security Income ("SSI") under

Title XVI of the Social Security Act ("the Act"). In denying Plaintiff's application for

benefits, the Commissioner determined that although Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability on July 3, 2001, and suffers from epilepsy, Plaintiff does not have an impairment within the Act's definition of impairment. (R. 22).[1] The Commissioner determined that Plaintiff's allegations about his impairment are not fully credible. (R. 22). The Commissioner also found that Plaintiff has no past relevant work, and has the residual functional capacity to perform work at all exertional levels, but should avoid hazards such as heights and moving machinery. (R. 22). As such, Plaintiff was found not disabled, as defined in the Act, at any time through the date of the Commissioner's decision. (R. 22).

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits with a filing date of August 16, 2002, alleging he was disabled since July 3, 2001. (R. 57). The application was denied on September 27, 2002. (R. 26-31). Pursuant to Plaintiff's request (R. 32-35), on December 7, 2004, an administrative hearing was held before Administrative Law Judge ("ALJ") Timothy M. McGuan ("the ALJ"), at which time Plaintiff, then represented by Jeffrey E. Marion, Esq.,[2] appeared and testified. (R. 14-23). On December 22, 2004, the ALJ found Plaintiff was not disabled. (R. 14-23).

On December 29, 2004, Plaintiff requested review of the hearing decision by the Appeals Council. (R. 11-13). On September 23, 2005, the Appeals Council found no

---

[1] "R." references are to the page numbers of the administrative record submitted in this case.

[2] Plaintiff is no longer represented by counsel.

basis for granting the review and denied the request, thereby rendering the ALJ's hearing decision the final decision of the Commissioner. (R. 5-8). This action followed on November 28, 2005. The case was remanded by stipulation (Doc. No. 3), filed on January 25, 2006, between counsel for Plaintiff and Defendant, for further administrative proceedings because the tape recording of Plaintiff's December 7, 2004, hearing contained no information. A hearing was held on November 2, 2006, before the ALJ, but the case was continued for two months so that Plaintiff could seek new counsel. (R. 350-52). A second hearing was held on January 25, 2007, before the ALJ, at which time Plaintiff had not obtained new legal representation. (R. 354-70). On January 31, 2007, following the second hearing, the ALJ held that Plaintiff was not disabled through the date of the decision. (R. 345).

The Commissioner's answer to the Complaint, filed on June 8, 2007 (Doc. No. 5), was accompanied by the record of the administrative proceedings. On September 6, 2007, the Commissioner filed a motion for judgment on the pleadings, supported by the attached Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings (Doc. No. 10) ("Commissioner's Memorandum"), and the Affidavit of Assistant United States Attorney Kevin D. Robinson ("Robinson Affidavit"). On June 25, 2008, Plaintiff filed a Motion for Hearing (Doc. No. 11). Defendants filed a Reply to Plaintiff's Motion for Hearing (Doc. No. 13) on July 22, 2008. On April 9, 2009, Plaintiff filed supplemental medical records (Doc. No. 14).

Based on the following, Defendant's motion (Doc. No. 9) should be GRANTED.

**<u>FACTS</u>**[3]

Plaintiff, Gerald S. Bailey ("Plaintiff"), was born on October 4, 1968, and for some time prior to August, 27, 2002 lived alone in an apartment. (R. 19, 57). Plaintiff has a high-school education and most recently worked in the past as a laborer, including as a general laborer, maintenance/dishwasher, construction worker, and stock and inventory worker (R. 20, 95-101). Plaintiff most recently worked in a temporary capacity from November 2003 through February 2004 in shipping and receiving. (R. 20). Prior to that, Plaintiff last worked in 2001. (R. 20).

It is undisputed that Plaintiff suffers from epilepsy, with which he was diagnosed on January 26, 1998. (R. 247). There is no treatment record for Plaintiff prior to 1998. Plaintiff was treated by private physicians from 1998 through 2002 (R. 167-301), and in the Erie County Correctional Facility ("the Correctional Facility") from 1999 through 2002 (R. 145-58).

Plaintiff applied for SSI benefits on August 16, 2002 (R. 57), claiming he was unable to work because of his epilepsy. In a Disability Report filed August 27, 2002, in support of his SSI application, Plaintiff claimed that he suffers from epilepsy, and that because of "spells and seizures," he could not operate heavy machinery. (R. 86.) Plaintiff stated in this report that he stopped work in July 3, 2001, because he had suffered a head injury. (R. 86.)

On January 26, 1998, Plaintiff had a seizure lasting four to five minutes while at work and was admitted to Buffalo General Hospital ("the hospital"). (R. 247, 272).

---

[3]Taken from the pleadings and records filed in this matter.

Plaintiff suffered another seizure while in the hospital's emergency room lasting about one minute. (R. 248). Plaintiff had a normal CT scan on January 26, 1998. (R. 250, 272). On January 27, 1998, Plaintiff had a normal waking electroencephalogram (R. 257, 259), and on January 28, 1998, Plaintiff had an MRI of uncertain significance. (R. 249, 261). Plaintiff was given the anti-epileptic medication Dilantin and Tylenol (R. 261) and was discharged from the hospital on January 28, 1998 with a prescription for Dilantin. (R. 255). Plaintiff was instructed to follow up with the neurology clinic at the hospital two weeks after his discharge, and to have his blood-Dilantin level checked one week prior to the follow-up visit. (R. 248). The discharge record from Plaintiff's January 1998 hospitalization shows that Plaintiff said his seizures are typically nocturnal, and before this hospitalization, his last seizure was in October 1997. (R. 247).

Plaintiff was again treated at the hospital on July 4 and 5, 2001, after he was assaulted with a lead pipe on July 3, 2001, Plaintiff's alleged disability onset date. (R. 227-31). At that time, Plaintiff complained of pain in many places on his body, including his head, left neck, shoulder, arm, hand, and side (R. 216-17). Plaintiff underwent CT scans of his head and neck; his head scan was unremarkable (R. 213), and his neck scan showed some injuries and suggested an angiogram to relieve concern over injury to the carotid sheath. (*Id.*) X-rays of Plaintiff taken on July 5, 2001 showed normal images and no signs of fracture to Plaintiff's left hand, elbow, forearm, chest, pelvis, cervical spine, thoracic spine, and lumbosacral spine (R. 211-12); however, Plaintiff had a borderline fracture of his left shoulder. (R. 228). Plaintiff did not keep nor reschedule a follow-up surgical clinic appointment. (R. 209). There is no record of Plaintiff visiting orthopedic or oral surgery clinics as instructed when he was discharged. (R. 231).

5

On September 9, 2002, Plaintiff was assessed at the Erie County Medical Center ("ECMC") Division of Chemical Dependence, and William R. House, a Credentialed Alcohol and Substance Abuse Counselor, recommended that Plaintiff begin drug or alcohol counseling, random testing, and a vocational program. (R. 162). On September 11, 2002, Plaintiff suffered a stab wound by a knife to his left arm for which he was admitted to the hospital for treatment . (R. 195-206). Plaintiff continued treatment for this knife wound through October 2002. (R. 173-74, 176).

On September 25, 2002, Plaintiff saw a physician about his Dilantin prescription, and his daily dosage was increased to 400 mg. (R. 177). Plaintiff was advised to have his Dilantin level checked but stated that he had insufficient time for such testing, and left the physician's office without the prescription. (R. 177). Plaintiff's next visit to a physician was on April 2, 2003 at which time he requested a refill of his Dilantin prescription. (R. 171). Plaintiff's seizure disorder was described as "well controlled" in a report by Dr. Richard Schifeling. (R. 171). At a physician visit on April 30, 2002, Plaintiff reported that his last major seizure for which he was hospitalized was in 2002, and his last minor seizure was in January 2003. (R. 170). No records filed show hospitalization for any seizures in 2002.

On August 12, 2004, Plaintiff was examined for complaints of difficulty in breathing. (R. 292). On August 20, 2004, Plaintiff went to the hospital complaining of fever, chills, and chest pains, but left the examination room before he was treated. (R. 280-85). Plaintiff returned to the hospital and had a CAT scan of his head and chest on September 7, 2004, which showed clear lungs (R. 300), and "no acute intracranial hemorrhage, mass effect, or edema" were identified (R. 301).

At the time of Plaintiff's second hearing before the ALJ, Plaintiff submitted additional medical records covering the time period between his first hearing and the second hearing. (R. 392-433). These records show that Plaintiff continued treatment with a physician who scheduled medicine revisit appointments throughout 2006. On March 24, 2005, Plaintiff informed a physician that his last seizure was on March 18, 2005. (R. 424). During a routine appointment on August 26, 2005, Plaintiff complained of jaw pain relating to July 2001 beating, but denied other problems and requested prescription refills. (R. 422). On January 5, 2006, Plaintiff complained of memory problems starting during July or August of 2005, and also requested epilepsy drug prescriptions. (R. 420). On March 16, 2006, Plaintiff sought medical attention for his complaints of headaches. (R. 418). On March 29, 2006, Plaintiff said his headaches were becoming more constant, and requested an HIV test. (R. 425). Plaintiff was counseled on his negative HIV test results on April 12, 2006, and Plaintiff complained that he was still having headaches. (R. 414). On a June 15, 2006 visit, Plaintiff said he suffered a mild seizure two weeks earlier. (R. 412). At a June 19, 2006 visit, Plaintiff reported having two to three seizures per year and stated that though formerly nocturnal, his seizures were now occurring during the day. (R. 401). On July 26, 2006, Plaintiff complained of pain in the left side of his mouth and headaches, and was given epilepsy drug prescriptions. (R. 411). Plaintiff underwent an MRI on August 30, 2006, which was normal. (R. 405). At a visit on September 21, 2006, Plaintiff again complained of jaw pain, and according to treating physician's report, Plaintiff told the physician that if the doctor signed Plaintiff's disability papers, Plaintiff would give the doctor "a cut" of his payments. (R. 406).

Plaintiff submitted additional medical records in support of his motion for hearing, filed June 25, 2008 (Doc. No. 11), which included reports from Dr. Maritza Baez dated January 8, 2008 and May 12, 2008. These reports briefly describe Plaintiff's medical records as previously discussed above, Facts, *supra*, at 4-7, and state that all types of work activities would be contraindicated for Plaintiff as a result of Plaintiff's physical, mental and addiction limitations.

On April 9, 2009, Plaintiff filed new medical records containing a report by Dr. Baez dated November 18, 2008, repeating the information contained in the reports by Dr. Baez submitted with Plaintiff's motion (Doc. No. 11). These documents include a report from an MRI of Plaintiff's lumbar spine to diagnose weakness in Plaintiff's left leg, about which Plaintiff complained, with abnormal results, "demonstrating diffuse degenerative changes of the intevertebral discs with segmental narrowing of the lumbosacral spine." (*Id.*)

Records from Plaintiff's incarceration at the Erie County Correctional Facility ("Correctional Facility"), which appear to cover the periods of January 14, 1999 through at the earliest January 25, 1999, and June 11, 2002 through August 5, 2002, do not show any evidence of seizures. (R. 145-58). Plaintiff was prescribed Dilantin by the Correctional Facility medical staff in January 1999 (R. 156) and June 2002 (R. 148). On July 1, 2002, Plaintiff was seen by Dr. Lebowitz at the Correctional Facility after Plaintiff tested positive for syphilis, and was treated; all other screening tests produced negative results. (R. 146, 149-50, 152).

Plaintiff's work history report, completed personally by Plaintiff and filed on August 27, 2002 in support of his application for SSI benefits, shows a history of

employment as a general laborer stacking boxes of computer parts (R. 96), a grounds maintenance worker using basic tools such as hammers, measuring tape, and paint brushes (R. 97), a general laborer holding temporary jobs including, *inter alia*, warehouse work, roofing, construction, and washing cars, (R. 98), a maintenance and dishwasher position at a restaurant that included mopping and sweeping floors, cleaning the food area, washing food equipment and taking out the trash (R. 99), a position as a construction worker building and demolishing houses, that required nailing, drilling, and cleaning up trash (R. 100), and a position with a temporary company in San Francisco performing warehousing, construction, car washing and maintenance. (R. 101).

## DISCUSSION

      At the outset, the court addresses Plaintiff's recently submitted evidence. According to Plaintiff's work history, Facts, *supra*, at 8-9, Plaintiff satisfied the insured status requirements for disability insurance only through September 30, 2006. (R. 341.) Plaintiff therefore must have been found disabled on or before September 30, 2006 in order to be entitled to disability insurance benefits under the Act. 20 § C.F.R. 404.131. Accordingly, the evidence Plaintiff submitted with his motion for hearing and on April 9, 2009 cannot be considered in this action, as it does not relate to the relevant period for finding a disability, which ended with Plaintiff's loss of insured status on September 30, 2006. *See Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (holding that assertion of disability not related to the relevant employment period cannot be considered in determining whether claimant is disabled).

**Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits or Supplemental Security Income benefits if the individual is unable

> . . . to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . . An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & 423(d)(2)(A), and 1382c(a)(3)(A) & 1382c(a)(3)(C)(i). Once the claimant proves that he is severely impaired and is unable to perform any past relevant work, the burden shifts to the Commissioner to prove that there is alternative employment in the national economy suitable to the plaintiff. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). "In assessing disability, the [Commissioner] must make a thorough inquiry into the claimant's condition and must be mindful that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'" *Monguer v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (quoting *Gold v. Sec'y of H.E.W.*, 463 F.2d 38, 41 (2d Cir. 1972)).

**A.      Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's finding are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable

person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When the Commissioner is evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medial opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d. Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically accepted techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight.[4] *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 416.927(d). The Commissioners's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas v. Schweiker*, *supra*, at 1550; 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). "Congress has instructed ... that the factual findings of the [Commissioner],[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The federal regulations set forth a five-step analysis that the Commissioner mut follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520,

---

[4] The treating physician's opinion is given greater weight because of "continuity of treatment he provides and the doctor/patient relationship he develops place him in a unique position to make a complete and accurate diagnosis of his patient." *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983).

[5] Pursuant to § 106 of the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995. In accordance with § 106(d) of that Act, references to "the Secretary" have been replaced with "the Commissioner."

416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the individual is engaged in such activity, the inquiry ceases and the individual cannot be eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits his physical or mental ability to do basic work activities, as defined in the regulations. 20 C.F.R. §§ 404.1520(c), 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment, and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education, or work experience, 20 C.F.R. §§ 404.1520(d), 416.920(d), as, in such a case, there is a presumption that an applicant with such an impairment is unable to perform substantial gainful activity.[6] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, at *2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work,

---

[6]The applicant must meet the duration requirement which mandates that the impairment must last for at least a twelve month period. 20 C.F.R. §§ 404.1509 and 416.909.

the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry v. Schweiker*, *supra*, at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [his] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. *Id.* The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry*, *supra*, at 467. In reviewing the administrative finding, the court must follow this five-step analysis to determine if there was substantial evidence on which the Commissioner based her decision. *Richardson v. Perales*, 402 U.S. 389 (1971).

**B.** **Substantial Gainful Activity**

The first inquiry is to determine whether the applicant is engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties and is done for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.

In this case, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability, July 3, 2001. (R. 341).[7] That finding is undisputed.

---

[7]All findings of the ALJ are taken from the January 31, 2007 hearing decision (R. 337-45) rendered following the remand and ALJ re-hearing of Plaintiff's case.

**C.**     **Severe Physical or Mental Impairment**

The next step of the analysis is to determine whether the applicant had a severe physical or mental impairment significantly limiting his ability to do "basic work activities." "Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1520(b), 416.920(b). "Basic work activities" include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out, remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). Further, a physical or mental impairment is severe if it "significantly limit[s]" the applicant's physical and mental ability to do such basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a) (bracketed text added).

The ALJ concluded that the medical evidence establishes that Plaintiff has epilepsy. (R. 341). The ALJ then continued to the next step, a finding of whether Plaintiff's condition was severe enough to be set forth in the Listing of Impairments, Appendix 1, 20 C.F.R. Pt. 404, Subpt. P (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). In the Listing of Impairments, epilepsy is listed in two separate categories:

> *Epilepsy–convulsive epilepsy (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.* With:
>      A. Daytime episodes (loss of consciousness and convulsive seizures) or
>      B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1., Pt. A, § 11.02.

> *Epilepsy–nonconvulsive epilepsy (petit mal, psychomotor, or focal),*
> *documented by detailed description of a typical seizure pattern, including*
> *all associated phenomena; occurring more frequently than once weekly in*
> *spite of at least 3 months of prescribed treatment.* With alteration of
> awareness or loss of consciousness and transient postictal[8]
> manifestations of unconventional behavior or significant interference with
> activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1., Pt. A, § 11.03.

The ALJ found, and the record reflects, that although the Plaintiff has epilepsy,

there is no unequivocal evidence that Plaintiff's epilepsy causes any "alteration of

awareness or loss of consciousness and transient postictal manifestations of

unconventional behavior or significant interference with activity during the day. The

claimant's epilepsy is very mild and is well controlled with medications." (R. 171, 247,

342, 401, 405). According to the record, Plaintiff was hospitalized once for a seizure

while at work, and Plaintiff's medical records do not reveal whether Plaintiff was taking

medications for epilepsy at that time. (R. 247, 272). Plaintiff's medical records show that

he rarely suffers seizures during the daytime. (R. 247). Plaintiff's epilepsy was

described as "well controlled" at an April 2003 physician's appointment (R. 171).

Significantly, although not addressed by the ALJ, the record fails to indicate that any of

Plaintiff's treating physicians for the relevant time period have opined that Plaintiff's

epilepsy has rendered him to be completely disabled and unable to work. Accordingly,

Plaintiff's epilepsy is not so severe as to meet or equal the relevant Listing of

---

[8] "Postictal" is defined as a period of time following a seizure. 20 C.F.R. Pt. 404, Subpt. P, App. 1., Pt. A, § 11.00. Seizures are often followed by a period of confusion, difficulty speaking, and other symptoms that impair normal functioning. *Jehn v. Barnhart*, 408 F. Supp.2d 127, 130 (E.D.N.Y. 2006).

Impairments to be considered disabling.

**D.    Residual Functional Capacity**

The fourth inquiry in this five-step analysis is whether the applicant has the "residual functional capacity" to perform past relevant work. Although the ALJ found that Plaintiff has not performed any past relevant work, the ALJ found that Plaintiff has the "residual functional capacity to perform the physical requirements of work at all exertional levels," but cautioned that Plaintiff may need to avoid hazards such as heights or moving machinery. (R. 342). The ALJ did note, based on all of the evidence in the record, including opinion testimony of a vocational expert, that while Plaintiff's work record did not meet the relevant work threshold and Plaintiff was previously engaged largely in jobs that would be precluded by epilepsy (R. 342-43), Plaintiff's epilepsy was not so severe as to preclude Plaintiff from available alternative employment. (*Id.*).

**E.    Suitable Alternative Employment in the National Economy**

The ALJ found that Plaintiff did not have substantial past relevant work, but because of the ALJ's finding that Plaintiff could perform the physical requirements of work under the residual functional capacity analysis with some limitations for hazards, the ALJ conducted an alternative employment analysis to make a determination as to whether there was any position within the national economy for which the Plaintiff would be qualified or suitable. Because of the ALJ's finding that Plaintiff had no past relevant experience, the burden shifted to the Commissioner to prove that there was substantial

gainful work that Plaintiff could perform in light of his physical capabilities, age, education, experience, and training. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). Further, it is the clear rule in the Second Circuit that "all complaints . . . must be considered together in determining . . . work capacity." *DeLeon v. Secretary of Health and Human Services*, 734 F.2d 930, 937 (2d Cir. 1984). It is improper to determine a claimant's work capacity based solely upon an evaluation of the severity of the claimant's individual complaints. *Gold v. Secretary of Health and Human Services*, 463 F.2d 38, 42 (2d Cir. 1972).

To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they permit certain work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Decker*, *supra*, at 294. An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.[9] *Id.* In addition, the Commissioner must prove that the claimant's skills are transferrable to the new employment, if the claimant was employed in a "semi-skilled" or "skilled" job.[10] *Decker*, *supra*, at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the

---

[9]"Sedentary work" is defined as: "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[10]The regulations define three categories of work experience: "unskilled," "semi-skilled," and skilled." *Decker*, *supra*, at 295.

national economy. *Id.* at 296.

In this case, the ALJ determined that Plaintiff retained the residual capacity to perform the physical requirements of work at all exertional levels. (R. 342). Upon determining that Plaintiff retained the residual functional capacity to meet the demands of work at all exertional levels but avoiding heights and moving machinery, the ALJ then, in accordance with the second prong of the analysis, applied the "Medical Vocational Guidelines ("the grids") to determine whether particular jobs existed in the national economy practical for an individual limited to Plaintiff's abilities, *Decker*, *supra*, at 296, and concluded that Plaintiff was not disabled. (R. 345). Specifically, the grids are often used to determine whether alternative employment exists in the national economy. *Decker*, *supra*, at 296; *Bapp v. Bowen*, *supra*, at 604. The grids combine several factors including education, work experience, and age to determine whether a finding of "disabled" or "not disabled" should be rendered.

In this case, the grids show that a person such as Plaintiff who, on January 25, 2007, the date of the administrative hearing, was thirty-eight years of age, is classified as a younger individual, with a high school education, with no previous relevant work experience, and residual functional capacity for work at all exertional levels with a solely non-exertional limitation, Rule 204.00 of the Regulations directed a conclusion that Plaintiff was not disabled. (R. 344).

Because the ALJ determined that Plaintiff's "nonexertional limitations" would diminish his ability to perform the full range of work indicated by the grids, the ALJ obtained testimony from a vocational expert, J. Steinbrenner ("Steinbrenner"), at the hearing as to what "jobs exist in the national economy that Claimant can obtain and

perform." *Bapp*, *supra*, at 603. In the instant case, Steinbrenner testified that a person of Plaintiff's age, education, and capacity for work at all exertional levels with nonexertional limitations of avoiding unprotected heights and heavy machinery, could work as a handpacker, for which there are 920,000 jobs in the national economy and 1,644 jobs in the Western New York region. (R. 368). Steinbrenner also testified that Plaintiff could work in his earlier position as a housekeeper. (R. 368).

The ALJ further found that Plaintiff's allegations of limitations are not fully credible. (R. 343). While subjective complaints alone are not sufficient to support a finding of disability, such complaints must be accorded weight when they are accompanied by "evidence of an underlying medical condition" and an "objectively determined medical condition [which is] of a severity which can reasonably be expected to give rise to the alleged pain." *Cameron v. Bowen*, 683 F.Supp. 73, 77 n.4 (S.D.N.Y. 1984). The ALJ is not, however, required to "accept without question the credibility of such subjective evidence." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir, 1979). Rather, "[t]he ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus*, *supra*, at 27.

Here, although Plaintiff alleges that he is prone to seizures at work and that employers are reluctant to hire him because of his epilepsy, the record shows that Plaintiff's epilepsy is well controlled and is unlikely to have significant impact on his employment in positions not precluded by epilepsy. (R. 343). Accordingly, the ALJ did not err in discrediting the Plaintiff's subjective complaints with regard to the relevant period of time.

The clinical evidence and medical opinions contained in the record thus support the ALJ's determination that Plaintiff's impairments do not prevent him from performing work at all exertional levels with limitations for certain hazards, including the handpacker and housekeeping positions identified by the vocational expert. Accordingly, the ALJ's discrediting of Plaintiff's subjective complaints about the extent to which his epilepsy precludes gainful employment is supported by the record.

## **CONCLUSION**

Based on the foregoing, Defendant's motion for judgment on the pleadings (Doc. No. 9) should be GRANTED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: May 5, 2008
Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**
*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 5, 2008
            Buffalo, New York